AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
ONE PERSON UNDER RULE 41

Case No. 26-SW-200

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

Located within the jurisdiction of the District of Columbia, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section* *Offense Description*

18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year).

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Charles Williams, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date: 7/6/2026

[signature]
*Judge's signature*

City and state: Washington, D.C.

Matthew J. Sharbaugh
(United States Magistrate Judge)

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means ☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
ONE PERSON UNDER RULE 41

Case No. 26-SW-200

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located within the jurisdiction of the District of Columbia.
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before July 20, 2026 *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Matthew J. Sharbaugh .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ______ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ____________ .

Date and time issued: 7/6/2026

*Judge's signature*

City and state: Washington, D.C.

Matthew J. Sharbaugh
United States Magistrate Judge

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

**Return**

| Case No.: 26-SW-200 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ________________

*Executing officer's signature*

*Printed name and title*

**ATTACHMENT A**

*Person to be Searched*

The person to be searched is **ADRIAN THOMPSON**, [redacted].



# ATTACHMENT B

*Property to be seized from person of ADRIAN THOMPSON*

All items constituting evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year), (hereinafter, the "SUBJECT OFFENSE"), by ADRIAN THOMPSON, as described in the search warrant affidavit, namely, the following:

a. A sample of the deoxyribonucleic acid ("DNA") of the person identified in Attachment A to be collected via buccal or oral swab in accordance with established procedures, and to be analyzed forensically in accordance with the applicable, valid, established procedures.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF ONE PERSON UNDER RULE 41** | **SW No. 26-SW-200** |

**AFFIDAVIT IN SUPPORT OF APPLICATION UNDER RULE 41 FOR WARRANT TO SEARCH AND SEIZE**

I, Charles Williams, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing a search of a sample of the deoxyribonucleic acid ("DNA") from ADRIAN THOMPSON ("THOMPSON" or "THE SUBJECT") to be collected via buccal or oral swab in accordance with established procedures, and to be analyzed forensically in accordance with the applicable, valid, established procedures.

2. I, Charles Williams, hereinafter referred to as your affiant, have been employed as a Special Agent with the Criminal Investigations Unit of the United States Attorney's Office for the District of Columbia since February 2026, and I am presently assigned to the Criminal Investigations Unit. My responsibilities include investigating violations of federal law and District of Columbia Code and assisting in the investigation and prosecution of criminal offenses. I successfully completed the Criminal Investigator Training Program and the Basic Immigration Enforcement Training Program at the Federal Law Enforcement Training Centers.

3. Prior to my employment as a Special Agent, I served as a Task Force Officer with the Criminal Investigations Unit of the United States Attorney's Office for the District of Columbia beginning in April 2025. Before joining the United States Attorney's Office, I was employed by U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, where I

served as a Deportation Officer in Fairfax County, Virginia, for approximately seven years. During that time, I received specialized training and conducted numerous administrative and criminal investigations. In addition to my training as a criminal investigator, I earned a Master of Public Administration degree from Barry University.

4. During my law enforcement career, I have investigated violations of federal and local law; prepared search and arrest warrant affidavits; executed search and arrest warrants; interviewed defendants and witnesses; and collected, analyzed, and seized digital and physical evidence related to criminal investigations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other members of law enforcement and witnesses, including reviewing police reports and body worn camera footage. As this affidavit is submitted for the limited purpose of supporting probable cause, the affiant has not included every fact known to him or conveyed to him concerning this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. As a Special Agent with the Criminal Investigations Unit of the United States Attorney's Office for the District of Columbia, I am authorized to execute warrants issued under the authority of the United States.

6. Through my training and employment, I am also familiar with the fact that each person has a unique DNA composition. DNA isolated from blood, hair, skin cells, or other genetic evidence left at the scene of a crime or left on evidence of a crime can be compared with the DNA of an individual to identify an individual as a potential suspect, or exclude an individual as a potential suspect.

7. I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents and official government records, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein.

8. Because this affidavit is being submitted for the limited purpose of a search warrant for a buccal swab of THOMPSON, I have not set forth every fact learned during this investigation. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation, information provided by other law enforcement officers, reports and data provided by other officers, which I have read and reviewed, and, in part, upon information and belief.

9. On the basis of this familiarity, and on the basis of other information your affiant has reviewed and determine to be reliable, I allege the facts to show there is probable cause to believe that evidence of violations of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year) (hereinafter, the "SUBJECT OFFENSE"), will be found located in the cheek/saliva (buccal swab[1]) of THOMPSON.

[1] As the Supreme Court has recognized, a "buccal swab" is a "common procedure" that involves "wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells." *Maryland v. King*, 133 S. Ct. 1958, 1967-68 (2013). This procedure is "quick and painless" and poses "no threat to the health or safety" of a defendant. *Id*. at 1968.

**FACTUAL BACKGROUND**

10. On Saturday, June 1, 2024, members of MPD's Violent Crime Suppression Division (VCSD) Robbery Suppression Unit (RSU) were working the evening tour of duty assigned to the Robbery Suppression Initiative in MPD's Sixth District. All RSU members were dressed in plainclothes and were wearing outer vests with police markings and police body worn cameras.

11. Shortly after 11:18 p.m., Sergeant Scott Possinger and Investigator Wilfredo Guzman were patrolling the Clay Terrace neighborhood, which is in the Sixth District's Police Service Area 608. While in the neighborhood, Sergeant Possinger and Investigator Guzman observed a parked blue Audi Q8 bearing Virginia temporary tag 68184C[2] in the parking area directly in front of 323 53rd Street, Northeast. As Sergeant Possinger and Investigator Guzman drove past the vehicle, Sergeant Possinger used his marked police cruiser's spotlight to illuminate the driver's compartment of the Audi.

12. Sergeant Possinger observed an individual later identified as Dion Dempsey ("DEMPSEY") exit the driver's seat of the Audi and an individual later identified as Adrian THOMPSON exit the front passenger seat of the Audi. After both men exited the vehicle, they walked away from the Audi and Sergeant Possinger's MPD vehicle. Sergeant Possinger looked through the partially opened front driver's window of the unoccupied Audi and observed a large, clear plastic bag containing what was later found to be approximately 6.17 ounces of suspected marijuana. Sergeant Possinger asked DEMPSEY, who was still nearby, if he could speak with him

---

[2] A law enforcement record check for Virginia temporary tag 68184C, which showed that the vehicle, a 2019 Audi with VIN WA1FVAF1XKD045857, is registered to Dion DEMPSEY, at 14720 4th Street, Laurel, Maryland.

to explain that he was going to search the Audi. DEMPSEY voluntarily walked to speak to Sergeant Possinger, who explained that the amount of marijuana visible inside of the Audi was illegal, and that a further search of the vehicle would be conducted to search for additional marijuana. DEMPSEY protested the search and mentioned that the registered owner of the car was his aunt. As Sergeant Possinger unlocked the driver's door of the Audi through the partially opened window, DEMPSEY walked away from Sergeant Possinger and then began to flee on foot.

13. Sergeant Possinger conducted a further search of the vehicle and located a black handgun in the passenger glove box. While the search was ongoing and shortly after he fled on foot, DEMPSEY was apprehended by other RSU investigators several blocks away, in the backyard of a residence in the 200 block of 55th Street, Northeast.

14. Since THOMPSON was observed exiting the Audi at the same time as DEMPSEY and was still standing in the courtyard near the parked vehicle, THOMPSON was detained as well. Investigator Guzman recovered the marijuana and the firearm from the vehicle. DEMPSEY's Maryland driver's permit and cellular phone were in the front passenger compartment of the Audi.

15. The firearm, a Glock model 30S .45 caliber, had an obliterated serial number, 1 round in the chamber of the weapon, and 11 rounds in a 13 round magazine that was inserted in the weapon. **(Figure 1-2).**




***Figure 1 shows the Glock model 30S as it was located by Sgt. Possinger in the glovebox of the Audi.[3]***



***Figure 2 shows the Glock Model 30S after it was rendered safe by removing the magazine and ammunition***

---

[3] The firearm was initially observed by Sergeant Possinger and captured on his body-worn camera (BWC) at BWC timestamp 23:23:35 as depicted in Figure 1. Subsequently, Investigator Guzman briefly removed the firearm from the glove compartment at BWC timestamp 23:27:37. About one minute later, Investigator Guzman placed the firearm back in the glove compartment and photographed the firearm in the glove compartment at and around BWC timestamp 23:28:31. When the firearm was returned to the glove compartment and photographed, the firearm and other items in the glove compartment were in a slightly different position than when the firearm was first observed by Sergent Possinger. In a prior search warrant submitted to the Court, the photograph of the glove compartment taken by Investigator Guzman was included in the statement in support of probable cause.

16. THOMPSON was also in possession of $236 in U.S. currency.

17. The recovered suspected marijuana was located on the floorboard under the driver's seat with a black digital scale. It was field tested by RSU Investigator DaVon Thomas and gave a positive color indication for the presence of Tetrahydrocannabinol, the psychoactive ingredient in cannabis. The amount of recovered marijuana – approximately 175 grams, or 6.17 ounces – is greater than the legal limit for individual possession in Washington, D.C., which your affiant knows is two (2) ounces. The amount recovered is consistent with distribution and not for personal use.

18. THOMPSON was previously convicted of a felony for carrying a pistol without a license by the Superior Court of the District of Columbia in case number 2009-CF2-003876 and sentenced to 18 months' incarceration in December 2010. The offense is punishable by more than one year of incarceration and, having been sentenced to over a year of incarceration in that case, THOMPSON had knowledge of that fact.

19. Officers queried MPD's database and learned that DEMPSEY and THOMPSON did not have a license to carry firearm in Washington, D.C.

20. There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition in this case had to travel in interstate commerce. All the aforementioned events occurred within the jurisdictional limits of the District of Columbia.

21. DEMPSEY and THOMPSON were arrested and transported from the scene, and the Audi was towed for safekeeping and placed on the MPD Sixth District property book. DEMPSEY was charged with Unlawful Possession of a Firearm (Prior Conviction) in D.C.

Superior Court criminal case 2024 CF2 5378.[4] THOMPSON's charges were no papered.

22. On June 3, 2024, Judge Robert Rigsby of the Superior Court of the District of Columbia signed two search warrants to collect saliva samples containing DNA from THOMPSON and DEMPSEY in Superior Court case numbers 2024 CSW 002320 and 2024 CSW 002321, respectively.

23. Later that day, on June 3, 2024, buccal swabs were collected from THOMPSON and DEMPSEY and later transferred to the FBI and submitted into FBI evidence. The firearm and magazine were also swabbed for DNA and those swabs were also transferred to the FBI and submitted into FBI evidence. The DNA evidence was submitted to the FBI Laboratory for testing.

24. On August 8, 2024, the FBI Laboratory DNA Casework Unit issued a report that stated that DNA was obtained from the swab of the firearm and the magazine. The DNA obtained from the firearm contained a mixture of five or more individuals, rendering the results not suitable for comparisons. The DNA obtained from the magazine originated from four individuals, and the DNA results are 130 trillion times more likely if THOMPSON and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors. These results provide very strong support for the inclusion of THOMPSON's DNA in the DNA mixture that was obtained from the magazine. DEMPSEY was excluded as a potential contributor to the DNA found on the magazine.

25. DEMPSEY was charged in D.C. Superior Court in 2024 CF2 5378 where he was charged with both Felon in Possession and Carrying a Pistol Without A License, but the case was subsequently dismissed.

---

[4] On June 14, 2024, the Honorable Zia M. Faruqui authorized a search warrant for two cellular telephones recovered from DEMPSEY and the Audi in case 24-SW-192.

26. On January 28, 2025, a grand jury in the U.S. District Court District of Columbia retuned a one count indictment charging THOMPSON with violation of 18 U.S.C. § 922(g)(1) (Possession of a Firearm and Ammunition by a Person Convicted of an Offense Punishable by a Term of Imprisonment Exceeding One Year).

27. THOMPSON was arrested on June 3, 2025 in this case and released on his own personal recognizance with conditions.

28. The Government is not in a position to offer the testimony of the technician with the Crime Scene Investigations Division of the Metropolitan Police Department (MPD), who collected the buccal swabs from THOMPSON and DEMPSEY ("Officer 1").

29. On September 8, 2025, Officer 1 contacted the USAO and indicated that someone from the USAO had contacted a family member of his in an attempt to reach him about his testimony for the upcoming trial. Officer 1 indicated his displeasure in being subpoenaed, and his displeasure that attorneys at the USAO were reaching out to him and his family members about his testimony. During the conversation, Officer 1 indicated that if he were compelled to testify, he would testify that the D.C. Department of Forensic Sciences (DFS) did not have sterile environments. He also indicated he would say more on the stand, but did not specify what exactly he would say.

30. Following the September 8, 2025 phone call, Officer 1 again contacted the USAO and indicated that if he were to testify in the future, the USAO would need to provide him with a nurse to take care of his ill mother and a ride to the courthouse. Officer 1 also indicated that his memory was fading and that having attorneys from the USAO reach out to him was a trigger for his memory issues. Officer 1 sent a follow-up text message to a Special Agent with Homeland Security Investigations stating that he would try to call the Assistant U.S. Attorney (AUSA) the

following day when he was calmer, and that "[m]y emotions are getting the best of me right now and [I] can't get my thoughts together."

31. On September 9, 2025, attorneys with the USAO and a Special Agent with Homeland Security Investigations called Officer 1 to follow-up on his comments from the previous day. When asked about his comments regarding DFS, he responded that he was angry the day before and did not recall all his prior statements. When asked specifically about his statement that the DFS did not have sterile environments, Officer 1 expressed concern that the AUSA was asking a trick question. Officer 1 repeated that he did not remember everything he said on September 8, 2025.

32. In addition, based in part on these events, a complaint was filed on September 17, 2025, with the Charles County, Maryland Sherrif's Office, which resulted in an investigation into Officer 1's conduct. Officer 1 resigned from the agency prior to the conclusion of the investigation; however, the agency ultimately sustained unidentified violations against Officer 1 for violating agency policy and procedure.

33. On January 9, 2026, the Government spoke to MPD Mobile Crime Lab Technician Robert McCollum, and MPD Officer Jean Paul Paskalis. Both individuals described how firearms are processed in the District of Columbia and steps taken to ensure the integrity of the evidence, which is inconsistent with Officer 1's claim that firearms were being processed in unsanitary conditions.

34. At this time, the Government does not intend to call Officer 1 as a witness at trial. Accordingly, the Government now seeking a new search warrant to obtain a buccal swab from THOMPSON.

35. There is probable cause to search THOMPSON for a saliva sample containing his

DNA because there is a fair probability that his DNA is evidence of a crime.

36. The Government understands that the Defendant current resides within the District of Columbia.

37. Based on the foregoing facts, your affiant believes there is probable cause to believe that the firearm was possessed by THOMPSON. The affiant therefore believes there is probable cause to obtain a buccal swab from THOMPSON, to compare the DNA collected from the firearm and magazine recovered on June 3, 2024, to THOMPSON's DNA.[5]

**CONCLUSION**

38. Based upon the above-referenced facts, your affiant submits that there is probable cause to believe that evidence of the SUBJECT OFFENSE will be located in the cheek/saliva (buccal swab) of THOMPSON.

Respectfully submitted,

Charles Williams
Special Agent
U.S. Attorney's Office for the District of Columbia

Subscribed and sworn by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July 6, 2026.

HONORABLE MATTHEW J. SHARBAUGH
UNITED STATES MAGISTRATE JUDGE

[5] The Government intends to compare the DNA collected from the new buccal swab from THOMPSON to the buccal swab that the Government previously collected from THOMPSON on June 3, 2024, which was previously compared to DNA obtained from the firearm and magazine.